UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 20 CR 00108 |
| DAVID JOHNSON, | Judge Thomas M. Durkin |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Defendant David Johnson is charged in a multi-count indictment with carjacking, conspiracy, and firearm offenses. Johnson has moved to suppress all evidence against him on the grounds that his seizure and the subsequent search of his person and belongings violated the 4th Amendment. For the reasons set forth below, Johnson's motion is denied.

**Background**

On February 12, 2021, an African American man wearing a dark blue or black parka, black gloves, dark pants, and a black facemask approached a person parked in a Mercedes-Benz SUV in Orland Park. The man pointed a black handgun at the person, took his wallet and keys, and drove off in the SUV. The carjacking victim called 9-1-1 to report what happened. Police dispatch informed officers that an African American man, approximately 6-foot-2-inches tall and wearing a dark blue coat, had stolen a black Mercedes-Benz SUV.

Soon afterward, Officer LaChapelle of the Oak Forest Police Department saw an SUV matching the description and initiated a traffic stop, but the vehicle fled.

1

Less than a minute later, Officer Corona with the OFPD saw a black Mercedes SUV driving fast and erratically. He pursued the SUV onto a highway headed toward Chicago and followed it for several minutes until it left the highway and eventually crashed into another SUV. Corona then saw a black male, roughly 6-foot-2 and wearing a blue jacket, exit the vehicle and run away. Corona pursued the man on foot. During the pursuit, the man fired a gun at Corona. Corona eventually lost sight of the man a few blocks north of the crash site. He then relayed the description of the person he was chasing to the Chicago Police Department.

Roughly 20 minutes after the foot pursuit, CPD Officer Dercola observed an African American man wearing a long black coat in an alley about 5 blocks from where the SUV had crashed. The man ran away from Dercola. Minutes later, approximately two blocks away, Officer Torres saw a man wearing a black jacket and talking on a cell phone get into a black Acura. CPD conducted a traffic stop on the Acura and ordered the occupants out of the car. At least some of the officers had their weapons drawn at this time. Johnson was seated in the back seat of the car. He was wearing a maroon sweatshirt, black pants, and white shoes.

CPD officers searched the vehicle shortly after making the stop and recovered a license plate registered to a stolen vehicle in the trunk. They also found Johnson's cell phone and a black jacket in the back seat. Officers observed a map of the blocks surrounding the SUV crash location on Johnson's phone display.

Later, officers Dercola and Torres arrived on the scene. Both said Johnson's appearance was consistent with the individual they had seen near the alley. Officer

Corona also arrived and identified Johnson as the man who had fled from the Mercedes SUV and fired at him based on his dark pants and physical stature.

A black handgun was later recovered from the driver's side floorboard of the Mercedes SUV. After his arrest, police obtained physical evidence from Johnson connecting him to that gun. Johnson also gave statements and submitted to a gunshot residue test, and police obtained cell site location information from his phone.

## Discussion

Johnson advances two arguments in support of his motion to suppress. The first is that his arrest was unlawful under the Fourth Amendment because it was not supported by probable cause. The second is that police violated the Fourth Amendment when they made a traffic stop on the Acura without reasonable suspicion.[1]

In his original motion to suppress, Johnson claimed that police lacked probable cause to arrest him for carjacking, and that all evidence obtained as fruit of the illegal arrest must be suppressed. The government responded that police detained the occupants of the black Acura as part of an investigatory stop and quickly developed

---

[1] While Johnson has challenged both his arrest and the preceding traffic stop, he never specifically challenged the search of the Acura that occurred after the traffic stop, beyond arguing that any evidence developed through the search was insufficient to establish probable cause to arrest him for carjacking. Neither side discussed this issue in any meaningful detail, therefore it is outside the ambit of the Court's consideration of this motion. Regardless, if the traffic stop was unlawful, the subsequent search of the vehicle was likewise unlawful, and suppression of any evidence gathered after the stop would be appropriate. *See Brendlin v. California*, 551 U.S. 249 (2007).

probable cause to arrest Johnson for violation of Chicago's gun offender registration ordinance.[2] Orland Park police eventually took Johnson into custody on this basis.

Police may arrest a suspect without a warrant if they have probable cause to believe a crime has been committed. *United States v. Daniels*, 803 F.3d 335, 354 (7th Cir. 2015). Probable cause does not require an actual showing of criminal activity; police need only have a reasonable belief that a "probability or substantial chance of criminal activity exists." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018).

The Court agrees that probable cause existed to arrest Johnson for violation of the city ordinance. While Johnson was being detained, CPD Officer Hudson asked Johnson and another passenger for their full names and birth dates to run name checks on them. He then asked both men for the addresses. Johnson said he lived at an address on South Yates Boulevard. When Hudson searched the CPD database, it listed an address for Johnson on East 68th Street. Hudson asked Johnson to confirm his address and when he moved there. Johnson said he had resided at the South Yates address for two years. This entire interaction was captured on Hudson's body-worn camera.

---

[2] Johnson originally requested the Court hold an evidentiary hearing to resolve certain factual disputes regarding whether police had probable cause to arrest him for carjacking. R. 58. The Seventh Circuit recently "emphasize[d] to district courts the importance of an evidentiary hearing where relevant facts are unclear." *United States v. Segoviano*, __ F.4th __, 2022 WL 985433, at *2 n.2 (7th Cir. Apr. 1, 2022). However, after the Government raised the issue of the registration ordinance and Johnson shifted his attention to the traffic stop, both sides agreed an evidentiary hearing was not necessary. *See* R. 72, at 3; R. 77, at 24-25. Because nearly the entire sequence of events was captured on police body camera footage, the Court agreed that no hearing was needed.

Johnson had previously been convicted of two felony weapons offenses. Pursuant to Chicago Municipal Code Chapter 8-26, he was required to register as a gun offender, which included providing his address of residence, and to update that registration within 5 days if any information changed. Violation of the ordinance is punishable by fines or imprisonment up to 6 months.

Requesting identifying information and running a name check is a common law enforcement procedure during traffic stops. *See Hall v. City of Chicago*, 953 F.3d 945, 952-53 (7th Cir. 2020). In running this name check, police determined that Johnson was subject to the gun offender registration ordinance and that the address he provided, where he had apparently resided for 2 years, did not match the address on his registration. The body camera footage reflects that officers immediately recognized this as a violation of the ordinance, which required Johnson to update his information within 5 days of any changes. This information provided probable cause for arrest.

Given that police had probable cause to arrest Johnson for violation of the city ordinance, it is irrelevant whether probable cause existed to arrest him for carjacking. "An arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010). Johnson's arrest did not violate the 4th Amendment.

In his reply brief, Johnson raised a new argument that officers lacked reasonable suspicion to stop him and the other occupants of the Acura in the first place. Ordinarily an argument raised for the first time in a reply brief is deemed waived. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Here, Johnson said he was "compelled to raise additional issues not included in the original suppression motion" based upon "issues raised and discovery provided by the Government contemporaneous with their response." R. 72, at 1 n.1. Wavier may be inappropriate for an argument based on newly discovered evidence, but the reply does not provide this kind of detail. However, the Government has not pressed the waiver issue and filed a lengthy sur-reply addressing Johnson's new argument, so there is minimal prejudice in considering it. And in any event, Johnson's new argument may be rejected on its merits.

Police may conduct an investigatory stop on reasonable suspicion, supported by articulable facts, of criminal activity. *United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005). Reasonable suspicion is a lower threshold than probable cause and depends on the totality of the circumstances known to the officer at the time of the stop. *United States v. Rickmon*, 952 F.3d 876, 881 (7th Cir. 2020).

Johnson argues that police lacked reasonable suspicion because the suspect description relayed by Officer Corona after the SUV crash was "ubiquitous" and did not match Johnson's appearance. Corona described the person who fled from the SUV as 6-foot-2 black male wearing a dark blue jacket. Johnson is 5-foot-11 and was apparently wearing a black coat over a maroon hoodie.

6

Johnson is correct that "without more, a description that applies to large numbers of people will not justify the seizure of a particular individual." *United States v. Street*, 917 F.3d 586, 594 (7th Cir. 2019). But Johnson both overstates the description's inaccuracy and ignores several other important factors that contributed to the officers' reasonable suspicion.

First, the reported height disparity is small, and mistakes about clothing color are excusable given that the pursuit happened in the evening when it was already growing dark outside. And there is no evidence that Johnson was specifically targeted from a large group of people with similar appearances. If anything, the evidence (including body camera footage) shows that he was one of only a few people out on foot in the area. *Cf. United States v. Foster*, 891 F.3d 93, 104-06 (3d Cir. 2018) (holding that where armed robbery suspect was described only as a black man fleeing on foot, police had reasonable suspicion to stop the only black man on foot in the vicinity).

Second, the stop occurred close in time and place to where Corona lost sight of the suspected carjacker. Courts have frequently held that even an "imperfect description, coupled with close spatial and temporal proximity between the reported crime and seizure," justifies an investigatory stop. *United States v. Turner*, 699 A.2d 1125, 1129 (D.C. Ct. App. 1997). For example, in *United States v. Arthur*, 764 F.3d 92, (1st Cir. 2014), an officer received a description of two robbery suspects as African American men wearing dark, heavy clothing. He also knew their approximate location and the direction they were last seen heading. Minutes later, the officer encountered two men fitting this description roughly an eighth of a mile from the

7

crime scene, heading in the expected direction. The court held that these facts taken together were sufficient to justify making an investigatory stop. *Id.* at 97-98.

Like the officer in *Arthur*, police here had a general description of the suspect and a rough sense of which direction he was going. Corona told other officers who arrived in the area that he had followed the suspect north, in the direction of where Johnson was eventually seen entering the Acura roughly 20 minutes later. They soon encountered a person who seemed to fit that description in the area they expected to find him. These facts alone were arguably enough to justify an investigatory stop.

Third, another officer spotted a man who appeared to match the description in an alley between the SUV crash and the spot where Johnson got into the Acura, and the man ran away when he saw police. Unprovoked flight from law enforcement in the vicinity of a crime scene can be treated as suspicious behavior. *Street*, 917 F.3d at 595. Prior to the stop, the officer who saw Johnson get into the Acura informed other officers that he fit the descriptions of both the SUV driver and the man in the alley, reinforcing the suspicion that all the officers were following the same person—namely, the carjacking suspect.

Finally, the seriousness of the crime being investigated and the potential risk to police and public safety are also factors in the reasonable suspicion analysis. *United States v. Burgess*, 759 F.3d 708, 710-11 (7th Cir. 2014). These factors support the finding here. The stop was in response to an armed carjacking, followed by a high-speed pursuit through traffic, and culminating in a foot chase in which the suspect fired a gun at police. Courts have emphasized that comparable emergency situations

posing a risk to public safety entitle officers to conduct investigatory stops with less developed information. *See, e.g.*, *Rickmon*, 952 F.3d at 883.

In short, police stopped the Acura Johnson was riding in based on more than a generic description that applied to a large crowd of people. The totality of the circumstances created a reasonable suspicion that Johnson was the same person who had committed an armed carjacking, fled from the scene of the SUV crash, fired a gun at Officer Corona, and run away from other officers in a nearby alley. These facts are sufficient to justify the stop under the 4th Amendment.

Furthermore, the conduct of the officers during the stop did not violate the 4th Amendment. Once the Acura was stopped, police were entitled to order the occupants out of the vehicle as part of their investigation. *Maryland v. Wilson*, 519 U.S. 408, 419 (1997). The fact that officers had their weapons drawn was also justified based on concerns for police and public safety. The circumstances of the incident created a reasonable belief that one or more occupants of the vehicle might be armed or might again attempt to flee from police. In such circumstances, courts have held that officers are entitled to take precautions to protect themselves and others from possible danger. *United States v. Tilmon*, 19 F.3d 1221, 1225-27 (7th Cir. 1994). And as discussed, Johnson's eventual arrest was at minimum supported by probable cause of a violation of the gun offender registration ordinance.

9

## Conclusion

For the foregoing reasons, Johnson's motion to suppress is denied [R. 58].

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 12, 2022